NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| AETREX WORLDWIDE, INC., : <br><br> Plaintiff, : <br><br> v. : <br><br> SOURCING FOR YOU, LIMITED and : <br> SOURCING FOR YOU CONSULTING, : <br> LTD., : <br><br> Defendant. : | Hon. Dennis M. Cavanaugh <br><br> OPINION <br><br> Civil Action No. 13-cv-1943 (DMC)(MF) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Plaintiff Aetrex Worldwide's ("Aertrex") Order to Show Cause with Temporary Restraints (ECF No. 1) against Defendant Sourcing for You, Limited and Sourcing for you Consulting, Ltd. (collectively "Sourcing"). Also before the Court is Sourcing's Motion to Stay (ECF No. 7). Pursuant to FED. R. CIV. P 78, no oral argument was heard. Based on the following and for the reasons expressed herein, Plaintiff's Motion for Temporary Restraints is **denied** and Defendant's Motion to Stay is **denied.**

I.  BACKGROUND[1]

Aetrex sells orthotics and comfort footwear, including the high end orthotic line Lynco, which uses Aertex's exclusive foot measuring and orthotic selecting device iStep. Aertrex is seeking temporary restraints against Sourcing for You, Limited and Sourcing for You Consulting Limited (collectively "Sourcing") for their alleged breach of a non-compete provision contained in a

---

[1] This section is taken from the parties pleadings.

1

Supply Agreement pursuant to which Sourcing would manufacture certain orthotics for Aertex. Aertex and Sourcing also entered into a confidentiality agreement.

On March 14, 2009 the parties entered into a Supply Agreement whereby Sourcing would manufacture and supply orthotics, and Aetrex would guarantee certain minimum purchases to Sourcing (See Compl., Exh. A, hereinafter the "Agreement" or "Supply Agreement"). The Agreement contained a non-compete clause, in which Sourcing agreed not to permit any use of Aetrex's intellectual property or confidential information that might adversely affect Aetrex's good will and not to duplicate or otherwise make, sell or promote any products that are confusingly or deceptively similar to Aetrex's products. Pursuant to the Supply Agreement, Sourcing had access to Aetrex's intellectual property, confidential and proprietary information and trade secrets. On June 1, 2010, the parties extended the agreement through May 31, 2013.

Sourcing is involved in the manufacture of Beats orthotics, which Aetrex alleges are direct knock-offs of its Lynco line. The Beats product is being offered as an alternative to Lynco orthotics in retail establishments after customers are using the iStep machine, a machine manufactured by Aertrex to measure customer's feet and recommend personalized orthotics.

Aetrex filed the Complaint and Order to Show Cause on March 28, 2013 (ECF No.1). Sourcing filed a Response (ECF No. 6) and a Motion to Stay (ECF No. 7) on April 4, 2013.

## II.   STANDARD OF REVIEW

Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002) (quotation and citation omitted); Kos Pharm. Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004); see also Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994). "A decision to grant or deny a preliminary

injunction is within the sound discretion of the district court." Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms. Inc., 2010 WL 2428561 (D.N.J. June 9, 2010) (citing Oakley, Inc. v. Sunglass Hut Int'l, 316 F.3d 1331, 1339 (Fed. Cir. 2003)); see also Spartacus, Inc. v. Borough of McKees Rocks, 694 F.2d 947, 949 (3d Cir. 1982). In determining whether a preliminary injunction should be granted, a district court must consider four factors:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief will be in the public interest.

Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994); see also ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1477 n. 2 (3d Cir. 1996); Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 191-92 (3d Cir. 1990); CIBA-GEIGY Corp. v. Bolar Pharm. Co., Inc., 747 F.2d 844, 850 (3d Cir. 1984) cert. denied 471 U.S. 1137 (1985). Plaintiff bears the burden of showing that these factors weigh in favor of granting the injunction. Kos Pharm. Inc., 369 F.3d at 708. "Only if the movant produces evidence sufficient to convince the [court] that all four factors favor preliminary relief should the injunction issue." Opticians Ass'n of Am., 920 F.2d at 192; see also Nutrasweet Co. v. Vit-Mar Enter. Inc., 176 F.3d 151, 153 (3d Cir. 1999); AT&T Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994) (citation omitted).

The Third Circuit has accorded particular weight to the first two of the Injunction Factors: irreparable harm and likelihood of success on the merits. Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197 (3d. Cir. 1990) (quoting In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir. 1982) ("[W]e cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent.")); see also Scholastic Funding Grp., LLC v. Kimble, 2007 U.S. Dist. LEXIS 30333, at *28 (D.N.J. Apr. 24, 2007). Nonetheless, the district court should only award preliminary injunctive relief upon weighing all four factors. Am.

3

Tel. & Tel. Co., 42 F.3d at 1427, (citing Duraco Prod, Inc. v. Joy Plastic Enter. Ltd., 40 F.3d 1431, 1438 (3d Cir. 1994).)

## III.   DISCUSSION

### A.   Likelihood of Success on the Merits

#### 1.   Breach of Contract

To state a claim of breach of contract, a plaintiff must allege: (1) the existence of a contract; (2) a breach of that contract; (3) damages flowing from that breach; and (4) that the plaintiff performed their own contractual duties. See Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 210 F. Supp. 2d 552, 561 (D.N.J. 2002); Pub. Serv. Enter. Group, Inc. v. Phila. Elec. Co., 722 F. Supp. 184, 219 (D.N.J. 1989) (citing 5 Wright & Miller, Federal Practice & Procedure, § 1235 at 189–90)).

The Court finds that a valid contract exists, as the parties executed and agreed to extend the written Agreement. (See Compl., Exh. A). The Court also agrees with Aetrex that the non-compete provision in the Supply Agreement is valid and reasonable. (See Davidson Bros. v. D. Katz & Sons, Inc., 121 N.J. 196, 211-12 (1990). The parties disagree whether the contract was breached, specifically whether Sourcing's actions were within the scope of the prohibited conduct in the non-compete provision.

The Agreement provides:

> 6. Non-Compete/Sole Dealings. Sourcing agrees that it shall exclusively manufacture for, supply and sell the Products only to Aetrex for the Term of this Agreement and for the next twelve (12) month period following any expiration or termination of this Agreement. Sourcing agrees that during this time period it, as well as any of its subcontractors, **shall not directly or indirectly market, sell, promote, supply or manufacture Lyncos, any other Aetrex products, and any other brands or items which are competitive with Aetrex Products, or items which are the same or confusingly similar to Aetrex Products**, nor shall it seek or enter into any agreement to do same with or to any other individual or entity in the world including without limitation: Foot Solutions. Notwithstanding, Sourcing retains the right to

4

> manufacture insoles that are presented to it by other companies so long as such insoles are not competitive with any product of Aetrex. As used here in, competitive means: (1) any orthotic or insole that meets either Medicare diabetic insert Code A5512 or A5513 as defined in the year 2007 or in future definitions of these Codes; (ii) any orthotic or insole that has metatarsal support, a metatarsal pad(s) and/or rear foot posting(s); (iii) any orthotic or insole which is offered in enough styles/models to be recommended for different foot types (e.g., 1 style for low arch; 1 style for medium arch; 1 style for high arch, etc.); or (iv) any orthotic or insole which is the same or confusingly similar.

(Supply Agreement ¶ 6) (emphasis added). Aetrex argues that "in utter disregard of its very narrow non-compete obligations as set forth in the Supply Agreement, Sourcing is involved in the manufacture, promotion, sale, and/or distribution of a knockoff of Aetrex Lynco orthotics," known as the Beats orthotics. (Pl.'s Br. 1, ECF No. 1, March 28, 2013). Additionally, Aetrex alleges that Sourcing, through its owner Gerald Vineberg, has refused to cease Sourcing's involvement with the Beats orthotics. (Id. 8).

Sourcing has three arguments as to why Aetrex is unlikely to succeed on the merits. First, Sourcing argues that it was not in breach of the Agreement because the non-compete language of the Agreement does not apply to Sourcing's manufacture of the Beats orthotics. (Def.'s Opp'n Br. 9, ECF No. 6, April 4, 2013). As noted above, the Agreement provided Sourcing "shall not directly or indirectly market, sell, promote, supply or manufacture Lyncos, any other Aetrex products, and any other brands or items which are competitive with Aetrex Products, or items which are the same or confusingly similar to Aetrex Products." (Supply Agreement ¶ 6). The Agreement defines "Products" in Section 1, providing "'Products' means those orthotic insole footwear products which Aetrex, in its sole discretion, desires Sourcing to manufacture and supply to it." (Supply Agreement ¶ 1). Sourcing argues that these "Products" are limited to the four products Sourcing was currently manufacturing for Sourcing, related to "a niche diabetes insert line known as Thermothotics which have nothing to do with Lyncos or Beats." (Def.'s Opp'n Br. 9). Sourcing argues further:

5

> The use and non-use of capitalization of the term "Products" is essential to understanding the non-compete provision. By its terms, the non-compete clause only prevents Sourcing from selling or manufacturing Lyncos, other Aetrex products, or products that are competitive with or confusingly similar to the defined *Products* (with a capital P); those *Products* are the Thermotics Products and Sourcing For You manufactures for Aetrex.

(Id. 10) (emphasis in original). As the Beats orthotics line competes with Aetrex's Lyncos line, and not any of the four products that Sourcing was currently manufacturing for Aetrex, Sourcing argues that its manufacture of Beats is not in violation of the non-compete provision. However, the language of the Agreement defines Products more broadly then just those products Sourcing was currently manufacturing. By stating that Products are those products which "Aetrex, in its sole discretion, desires Sourcing to manufacture and supply to it," the Agreement leaves open the possibility that Aetrex could vary its requests to Sourcing. The Agreement specifically refers to "Current Products," and provides that "it is understood and agreed that Aetrex may, in its sole discretion, from time to time, change the Products and/or specifications, upon reasonable notice to Sourcing."

The Court is not convinced by Sourcing's argument. To limit the non-compete provision only to the products that Sourcing was currently manufacturing for Aetrex would be a tortured reading of the language of the Agreement. While the distinction between lower case "products" and upper case "Products" is obviously intended, the Agreement does not limit the types of products that Sourcing may produce for Aetrex, and thus the Court is not persuaded that Aetrex and Sourcing intended for the non-compete provision to only apply when Sourcing competed with the certain Aetrex products Sourcing at the time.

Sourcing also argues that Aetrex's material breach of the Agreement precludes it from enforcing the non-compete provision in the Agreement. Sourcing states that Aetrex has not complied with the minimum volume requirements in Section 3 of the Supply Agreement. Pursuant

6

to the Agreement, Aetrex agreed to minimum purchase requirements – intitally amounting to 300,000 pair per year, and later 220,000 of orthotics per year in exchange and adjusted for a longer term – from Sourcing.[2] Sourcing argues that under either the original number or the reduced number, Aetrex's failure to meet the minimum volume requirements constitutes a material breach, and thus Aetrex is precluded from enforcing the contract against Sourcing.[3]

"It is well established in New Jersey that 'when there is a breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement.'" <u>Nolan v. Lee Ho</u>, 577 A. 2d 143, 146 (N.J. 1990). However, alternatively, the non-breaching party may elect to continue performing under the contract and merely sue for the damages caused by the breach. As the New Jersey Supreme Court has explained:

> The fact that the defendant has been guilty of substantial breaches of essential obligations under the contract would ordinarily give the plaintiff the right to deem itself discharged from further performance and to sue the defendant for damages under the contract. But this is not always the injured party's only course of action. In a case of 'a material breach of contract which does not, however, indicate any intention to renounce or repudiate the remainder of the contract the injured party has a genuine election offered him of continuing performance or of ceasing to perform, and any action indicating an intention to perform will operate as a conclusive choice, not indeed depriving him of a right of action for the breach which has already taken place, but depriving him of any excuse for ceasing performance on his own part.'

---

[2] In Sourcing's Opposition Brief, Sourcing claimed "while the parties discussed a lower volume of 220,000 pairs of Products, Sourcing did not sign amendment agreeing to that lower volume." (Def.'s Opp'n Br . 6). Sourcing cited to the Declaration of Sourcing's owner, Gerald Vineberg (ECF No. 6-2). In his Declaration, Mr. Vineberg states that Sourcing did not sign the Amendment to the Agreement. Aetrex sent this Court a letter on April 5, 2013 (ECF NO. 9), alerting the Court to a series of emails between Michael Y. Shimshak, Aetrex's Vice President and General Counsel and Mr. Vineberg; in one of these emails, dated June 9, 2012, Mr. Vineberg stated that he would fax a copy of the executed Amendment to Mr. Shimshak on the next day. (Shimshak. Decl. ¶ 3, Ex. A). Aetrex also attached a signed Amendment, signed by both parties, to its letter as Exhibit B. (ECF No. 9, Ex. B). Sourcing then sent the Court a letter on April 5, 2012 (ECF No. 10) in response, where Sourcing alleges that "while, as set forth in his declaration, Mr. Vineberg recalled discussing an accommodation to the minimum supply obligations called for in the Supply Agreement, he has no recollection of signing the addendum and does not have a signed copy on his files." (ECF No. 10). As Aetrex has submitted a signed copy of the Amendment that is part of the record, the Court acknowledges its existence and finds that the Amendment, changing the minimum volume requirements from 300,000 to 220,000 products, was duly executed.

[3] From May-June of 2011-2012, Aetrex ordered 202, 512 Products, 17,488 fewer than the 220,000 required. In the same time period for the 2012-2013 year, Aetrex has only ordered 99,216 products, 120, 784 fewer than the 220,000 required, though that period has not yet ended. (Def.'s Opp'n Br. 6, <u>See</u> Vineberg Decl., ¶ 13).

Frank Stamato & Co. v. Borough of Lodi, 71 A. 2d 336, 339 (N.J. 1950) (citing 5 Williston on Contracts (Rev. Ed. 1937) § 1334, pp 3749-3750).

Though Aetrex breached the Agreement, Aetrex did not indicate any intention to repudiate or renounce the remainder of the Agreement, as it continued to do business with Souring. Thus Sourcing had a choice – either continue to perform or cease to perform. If Sourcing manifested any intention to continue performance, which it clearly did here by continuing to manufacture the products for Aetrex in the year 2012-2013 even though Aetrex under bought in 2011-2012, this "'operated as a conclusive choice, not indeed depriving him or a right of action for the breach which has already taken place, but depriving him of any excuse for ceasing performance on his own part.'" Id. "Insofar as defendants' legal position is concerned, their failure to declare a breach of the contract and their continuance under its terms for more than a year after having learned of the breach constitute a waiver of their right to declare a forfeiture of the agreement for previous violations by plaintiff." Ross Sys. v. Linden Dari-Delite, Inc., 163 A.2d 184, 189 (N.J. App. Div. 1960) aff'd in part, rev'd in part, 173 A.2d 258 (1961). Sourcing continued performance, and did not invoke any termination rights. Thus Aetrex is not precluded from enforcing the terms of the non-compete provision because they committed a material breach of the Agreement's terms.

Finally, Sourcing argues that Aetrex is not entitled to preliminary injunctions because this matter falls within the scope of the Agreement's arbitration clause, and thus this matter should be stayed pending arbitration. Sourcing filed a Motion to Stay in this Court in addition to its Opposition Brief on April 4, 2013 (See ECF No. 7).

The Agreement between Sourcing and Aetrex provided:

14. Miscellaneous
    F. Dispute Resolution and Governing Law. This Agreement shall be governed and construed exclusively under the laws of the State of New Jersey without references to the principles of conflicts of laws. **Except for an action**

> **seeking a temporary restraining order or injunction related to the purposes of this Agreement**, a suit to compel complicate with this dispute resolution process, on the entry and enforcement of any judgment on any arbitration award, any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate, shall be determined exclusively by final, binding arbitration to be held in mutually convenient locations within the USA.

(Supply Agreement ¶ 14) (emphasis added). While the Arbitration Clause provides an exception for injunctions, the injunction sought must relate to the purpose of the Agreement, and Sourcing argues that the current action does not satisfy this requirement. Sourcing argues "the purpose of the agreement is the manufacture and sale of four discrete Products used in the niche diabetes insert market." (Def.'s Opp'n Br. 11). The Court disagrees. While the Arbitration Clause does say the temporary restraining order or injunction must relate to "the purposes of this Agreement," Sourcing's narrow reading of the "purpose" of the Agreement is unpersuasive. This action falls squarely within the arbitration exclusion and thus this matter does not need to be stayed pending arbitration.

For the reasons listed above, at this stage of litigation, Aetrex has shown it is likely to succeed on the merits of the breach of contract claim.

2. Unfair competition

New Jersey's common law of unfair competition "is an amorphous area of jurisprudence. It knows of no clear boundaries . . . The concept is as flexible and elastic as the evolving standards of commercial morality demand." Duffy v. Charles Schwab & Co., Inc., 123 F. Supp. 2d 802, 815 (D.N.J. 2000) (quoting N.J. Optometric Ass'n v. Hillman-Kohan Eyeglasses, Inc., 365 A.2d 956, 965 (N.J. Super. Ct. Ch. Div. 1976)). However, the common law of unfair competition is "not completely boundless." Reckitt Benckiser Inc. v. Tris Pharma, Inc., 2011 U.S. Dist. LEXIS 19713, 25-26 (D.N.J. Feb. 28, 2011). "The law of unfair competition has its roots in the common-law tort

9

of deceit: its general concern is with protecting consumers from confusion as to source." Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 157, (1989). Indeed, it has been stated that "[t]he essence of unfair competition is the practice of palming off one's product as that of another." Squeezit Corp. v. Plastic Dispensers, 106 A.2d 322, 325 (N.J. App. Div.1954). Most cases of unfair competition encompass one of two business torts: the passing off of one's goods or services as those of another and unprivileged imitation, SK & F, Co. v. Permo Pharm. Lab., Inc., 625 F.2d 1055, 1062 (3d Cir. 1980). Thus, "[a]lthough it is impossible to categorize all acts which constitute unfair competition, there are a few fundamental elements that are definite. In essence... it consists of the misappropriation of one's property by another-property which has some sort of commercial or pecuniary value." N.J. Optometric Ass'n 365 A.2d at 965 (citations omitted). "The judicial goal should be to discourage, or prohibit the use of misleading or deceptive practices which renders competition unfair." Ryan v. Carmona Bolen Home for Funerals, 341 N.J.Super. 87, 92 (App.Div.2001).

> Aetrex argues:
>
> Sourcing's use of Aetrex's confidential, proprietary and trade secret information for its own benefit and that of its partners in the beats business constitutes unfair competition... Aetrex would not have entered into the Supply Agreement without the inclusion of the non-compete. (Compl. ¶ 34). Sourcing was aware of Aetrex's position and agreed to it, but nevertheless is using the information it obtained from Aetrex for its own benefit and that of its cohorts. That unfair competition has damaged Aetrex's customer relationships, goodwill and reputation.

(Pl.'s Br. 9). At this stage in litigation, without the benefit of discovery, it seems to the Court that this action is one of breach of contract and not unfair competition. The Court is not convinced that Aetrex could succeed on the merits of an unfair competition claim, but as Aetrex has shown it is likely to succeed on the merits of the breach of contract claim, the first prong of the temporary restraint analysis weighs in favor of Aetrex.

10

## B. Irreparable Harm

This Court next addresses whether Aertrex can demonstrate irreparable harm, because "[in] the absence of irreparable injury, no preliminary injunction would lie, even if the other three elements . . . were found." Nutrasweet Co., 176 F.3d at 153. "Establishing a risk of irreparable harm is not enough. A plaintiff has the burden of proving a 'clear showing of immediate irreparable harm' " absent injunctive relief. Hoxworth, 903 F.2d at 205 (citing ECRI v. McGraw–Hill, Inc., 809 F.2d 223, 225 (3d Cir.1987)). Irreparable harm cannot be presumed, and "must be established as a separate element, independent of any showing of likelihood of success." King Pharm. Inc. v. Sandoz, Inc., Civ. No. 08-5974, 2010 WL 1957640, at *5 (D.N.J. May 17, 2010) (citing Winter v. Natural Resources Defense Counsel, Inc., 555 U.S. 7, 21-22 (2008)). "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." Instant Airfreight Co. v. C.F. Airfreight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). Thus, the "preliminary injunction must be the only way of protecting the plaintiff from harm." Id. (emphasis added); see also Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994). Irreparable injury occurs when money damages are difficult to ascertain or would be inadequate. In re Arthur Treacher's Franchise Litig., 689 F.2d 1137, 1146 (3d Cir.1982). Failure to establish irreparable injury automatically results in denial of a preliminary injunction. Instant Airfreight Co., 882 F.2d at 800; see also Nutrasweet Co., 176 F.3d at 153.

Aetrex argues it is losing "current and future customers and goodwill" and that "it is imperative that the Supply Agreement be enforced to protect Aetrex's Lynco orthotics and iStep program, as well as Aetrex's customer relationships and goodwill." (Pl.'s Br. 11). Aetrex argues that the harm caused cannot be adequately redressed by money damages as it includes the loss of "hard won goodwill and market reputation." (Id.).

Aetrex also argues it only entered into the Supply Agreement with Sourcing because of the non-competition clause, as Sourcing's position as a manufacturer could result in damage if the confidential information and trade secrets it acquired of Aetrex's was misused. (Id.). Finally, Aetrex argues that Sourcing's wrongful use and disclosure of Aetrex's confidential, proprietary and trade secret information constitutes irreparable harm. (Id. at 13). (See Trico Equiptment, Inc. v. Manor, 2009 WL 1687391 at *8 (D.N.J. June 15, 2009) ("[D]isclosure of trade secrets causes irreparable harm.")

The Court does not find that Aetrex has met its burden of proving that it will suffer irreparable harm if a preliminary injunction is not entered. While it is true that loss of good will and customer relationships can cause irreparable harm, Aetrex has not proven that the damages it is suffering from are of the nature that cannot be remedied with monetary damages. This case appears to be a true breach of contract case, and for every customer that buys a Beats product instead of a Lynco product, a monetary amount can be assessed in favor of Aetrex if it is determined that Sourcing did in fact breach the Agreement. While the loss of good will and customer relationships may also occur, Aetrex has not made a convincing argument to the Court that this harm is irreparable.

As a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction, Aetrex's motion for temporary restraints must be denied. Instant Air Freight Co., 882 F.2d at 800.

### C. Balance of Hardships and Public Interest

The Third Circuit has "held that these latter two factors should be taken into account only when they are relevant." Am. Tel. and Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1427 n. 8 (3d Cir.1994); see also Hoxworth, 903 F.2d at 196.  These factors are only relevant

if the plaintiff has first established "both a likelihood of success on the merits and the probability of irreparable harm if relief is not granted" because a preliminary injunction cannot be sustained "where either or both of these prerequisites are absent." Id. (internal citations omitted). Since at least one of these prerequisites is absent, this Court need not address the potential harm to Sourcing or the public interest in granting a preliminary injunction.

## IV.     CONCLUSION

For the foregoing reasons, Aetrex's Motion for Temporary Restraints is **denied** and Sourcing's Motion to Stay is **denied.** An appropriate Order accompanies this Opinion.


                                                                    S/ Dennis M. Cavanaugh
                                                                    Dennis M. Cavanaugh, U.S.D.J.

Date:           April  16 , 2013
cc:             Clerk's Office
                All Counsel of Record
                Hon. Mark Falk, U.S.M.J.